UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALEXANDER HORACE COLE II, | ) |
| | ) No. CV-10-3107-CI |
| Plaintiff, | ) ORDER GRANTING PLAINTIFF'S |
| | ) MOTION FOR SUMMARY JUDGMENT, |
| | ) IN PART, AND REMANDING FOR |
| v. | ) ADDITIONAL PROCEEDINGS |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF. No. 21, 30.) Attorney D. James Tree represents Alexander Horace Cole II (Plaintiff); Special Assistant United States Attorney Thomas Stephen Inman represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and remands the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff applied for Supplemental Security Income (SSI) on February 15, 2008. (Tr. 122.) He alleged disability due to mental impairments (psychosis, NOS, antisocial personality disorder,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, IN PART, AND REMANDING FOR ADDITIONAL PROCEEDINGS - 1

depression, NOS, obsessive/compulsive disorder, polysubstance dependence reported remission, attention deficit disorder) and back pain, with an onset date of January 1, 1996. (Tr. 126.) After benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ James W. Sherry on January 6, 2010. (Tr. 39-71.) At the hearing, Plaintiff amended the alleged onset date for SSI benefits to the date of his SSI application, February 15, 2008. (Tr. 47.) Plaintiff, who was represented by counsel, and vocational expert (VE) Sharon N. Welter testified. The ALJ denied benefits on February 11, 2010, and the Appeals Council denied review. (Tr. 1-5, 13-23.) Plaintiff's claim is before this court pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, IN PART, AND REMANDING FOR ADDITIONAL PROCEEDINGS - 2

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time Plaintiff applied for SSI, he was 26 years old. (Tr. 113.) Plaintiff reported he completed the 11th grade in school and has not

obtained his GED.  (Tr. 46.)  He attended some special education classes while in school.  (Tr. 49.)  Plaintiff was single and lived in an apartment with his girlfriend at the time of the administrative hearing.  (Tr. 46.)  His sole source of income at the time was public assistance.  (Tr. 48.)  Plaintiff indicated he had not had any earnings from work in the last 15 years and had spent time living on the street and in shelters.  (Tr. 48-50.)  Plaintiff also stated he has had problems with drugs in the past, but had been clean and sober for about a year.  (Tr. 50-51.)

## ADMINISTRATIVE DECISION

At step one, ALJ Sherry found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. (Tr. 15.)  At step two, he found Plaintiff had severe impairments of "psychotic disorder; obsessive compulsive disorder; anti-social personality disorder; and polysubstance abuse (methamphetamine, marijuana and alcohol)," and no severe physical impairment.  (Tr. 15.)  At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings).  (Tr. 16.)  The ALJ specifically considered Listings 12.06, 12.08 and 12.09.  (Tr. 16.)  The ALJ determined Plaintiff could perform a full range of work at all exertional levels.  (Tr. 18.)  However, the ALJ's residual functional capacity (RFC) assessment included the following nonexertional limitations:

> [T]he claimant is capable of work limited to simple, routine and repetitive tasks and short, simple instructions; the claimant can maintain concentration, persistence and pace for routine tasks and adapt to work place changes; the claimant is capable of working with others on a superficial basis; and the claimant is capable

of avoiding workplace hazards within these limitations. (Tr. 18.) After summarizing the medical record and Plaintiff's statements, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (Tr. 18-21.)

At step four, the ALJ indicated that Plaintiff has no past relevant work. (Tr. 22.) At step five, based on the VE testimony and considering Plaintiff's age, education, work experience and RFC, the ALJ found there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including farm worker, fruit II, cook helper and kitchen helper. (Tr. 22-23.) The ALJ concluded Plaintiff had not been disabled since the application date and was therefore ineligible for benefits under the Social Security Act. (Tr. 23.)

**ISSUES**

The question presented is whether the ALJ's denial of benefits is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he (1) improperly rejected the opinions of his treating and examining medical providers; (2) improperly rejected Plaintiff's subjective complaints; and (3) failed to account for numerous limitations identified by Plaintiff's treating and examining medical providers in the hypothetical presented to the vocational expert. (ECF No. 22.)

**DISCUSSION**

**A.   Medical Evidence**

Plaintiff contends that the ALJ improperly rejected the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, IN PART, AND REMANDING FOR ADDITIONAL PROCEEDINGS - 6

opinions of his treating and examining medical providers. (ECF No. 22 at 14-19.) Defendant responds that the ALJ's evaluation of the medical opinion evidence is free of harmful legal error. (ECF No. 31 at 13-17.)

In making his RFC determination in this matter, the ALJ accorded weight to the opinions of consultative examining psychologist Roland Dougherty, Ph.D., and reviewing state agency psychological consultants, Sean Mee, Ph.D., and James Bailey, Ph.D. The ALJ also determined that the opinions of Angelo Ballasiotes, Pharm.D., Crystal Coffey, Pharm.D., and Jana Neal, M.S., Harry Kramer, Ph.D., Christopher Clark, M.Ed., LMHC, and Tracy Molina, MSW, were not persuasive evidence that Plaintiff suffered greater restrictions from a psychological standpoint.

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians), and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater,* 81 F.3d 821, 839 (9th Cir. 1996). A treating physician's opinion is given special weight because of his familiarity with the claimant and her physical condition. *Fair v. Bowen,* 885 F.2d 597, 604-605 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, IN PART, AND REMANDING FOR ADDITIONAL PROCEEDINGS - 7

nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion.  *Andrews*, 53 F.3d at 1042-1043.  Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives "specific," "legitimate" reasons for doing so, and those reasons are supported by substantial record evidence.  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

   Plaintiff was examined by Dr. Dougherty on May 28, 2008.  (Tr. 312.)  Plaintiff reported to Dr. Dougherty that he believed taking "crank" started his obsession with washing his hands and that his symptoms, including auditory hallucinations, started when he was using methamphetamine and marijuana.  (Tr. 312-313.)  Plaintiff stated that he quit using drugs on February 8, 2008, and his symptoms decreased.  (Tr. 313.)  Dr. Dougherty diagnosed rule out ADHD; rule out PTSD, in partial remission; marijuana dependence, in remission; alcohol dependence, in remission; methamphetamine dependence, in remission; psychotic disorder, NOS, possibly secondary to methamphetamine use; rule out cognitive disorder, NOS;

obsessive-compulsive disorder, hand washing; antisocial personality traits; rule out antisocial personality disorder; rule out schizotypal personality traits; and reported back problems. (Tr. 318.) He gave Plaintiff a GAF score of 60.[1] Dr. Dougherty opined that many of the symptoms Plaintiff reported are likely to have been due to prolonged chemical dependency. (Tr. 318.)

On May 31, 2008, Dr. Mee filled out a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment form. (Tr. 320-336.) Dr. Mee indicated that the record reflected that Plaintiff suffered from anxiety-related disorders, personality disorders and substance addiction disorders, all in remission. (Tr. 320.) Dr. Mee checked boxes indicating that Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (Tr. 330.) Dr. Mee believed Plaintiff was not significantly limited or moderately limited in all areas of functioning and would be able to understand and follow short, simple instructions and maintain concentration and pace for routine tasks, work with others on a superficial basis and travel, adapt to change, avoid hazards and set goals. (Tr. 334-336.) On September 25, 2008, Dr. Bailey affirmed Dr. Mee's opinions and conclusions. (Tr. 470.)

The ALJ indicated his finding that Plaintiff is capable of performing unskilled work involving short, simple instructions and

---

[1] A GAF of 60-51 reflects moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, IN PART, AND REMANDING FOR ADDITIONAL PROCEEDINGS - 9

simple repetitive tasks with superficial social interaction is supported by the opinions of Drs. Mee, Bailey and Dougherty. (Tr. 21.)

The ALJ accorded "little weight" to the Mental Residual Functional Capacity Assessment form completed by Plaintiff's treating medical provider Dr. Ballasiotes on March 4, 2009. Dr. Ballasiotes opined that Plaintiff was markedly or severely limited in 15 of 20 areas of mental functioning and explicitly stated that the assessed limitations "do not include limitations from current alcohol or drug use." (Tr. 473-475.) The ALJ explained that he rejected Dr. Ballasiotes' opinions in this regard because the opinions were unsupported by objective findings and Dr. Ballasiotes failed to separate out the effects of any drug or alcohol abuse. (Tr. 21.) For the reasons provided below, the undersigned judicial officer finds that the rationale provided by the ALJ for rejecting Dr. Ballasiotes' opinions is insufficient.

First, as indicated in Social Security Ruling 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical or laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.

The ALJ's assertion that the treating physician's opinion is not supported by objective findings is not a valid reason to outright reject the doctor's opinions.

Second, the ALJ's statement that Dr. Ballasiotes' assessment failed to separate out the effects of Plaintiff's drug or alcohol abuse (Tr. 21) is erroneous. Dr. Ballasiotes explicitly stated that

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, IN PART, AND REMANDING FOR ADDITIONAL PROCEEDINGS - 10

the assessed limitations "do not include limitations from current alcohol or drug use." (Tr. 475.)  Moreover, the Ninth Circuit has held it is improper for the ALJ to attempt to separate out the effects of any drug addiction or alcohol abuse (DAA) unless it is first determined that a claimant is disabled.  *Bustamante v. Massanari*, 262 F.3d 949, 954-955 (9th Cir. 2001).  Consequently, even if Dr. Ballasiotes' assessment included limitations resulting from Plaintiff's alcohol or drug abuse, the ALJ is required to first proceed with the five-step inquiry without attempting to determine the impact of DAA on Plaintiff's functioning.  *Id*.  If the ALJ finds that the claimant is disabled and there is medical evidence of DAA, only then should the ALJ proceed to determine if the claimant would be disabled if he stopped using alcohol or drugs.  *Id*.  In this case, the ALJ did not proceed in this manner.[2]

The ALJ gave only "some weight" to the Mental Residual Functional Capacity Assessment form completed by Jana Neal, M.S., and Crystal Coffee, Pharm.D., on December 7, 2009.  (Tr. 20, 544-546.)  It appears the ALJ failed to give full weight to their opinions because Ms. Neal and Dr. Coffee concluded that "some of these limitations may be impacted by past substance use." (Tr. 20.)

It is apparent that the ALJ again erroneously attempts to

---

[2]Defendant argues that this error is harmless because the ALJ ultimately decided that DAA was not material in this case. (ECF No. 31 at 17.)  However, assessed limitations which are improperly rejected as possibly drug/alcohol related cannot be considered harmless error.  It is necessary for ALJs to follow the procedure provided by the Ninth Circuit in *Bustamante*.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, IN PART, AND REMANDING FOR ADDITIONAL PROCEEDINGS - 11

separate out the effects of DAA without observing the procedure set forth in *Bustamante*.  Furthermore, like Dr. Ballasiotes, these medical professionals explicitly indicated that the limitations they assessed "do not include limitations from current alcohol or drug use." (Tr. 546.)  Therefore, contrary to the ALJ's conclusion, the assessment of Ms. Neal and Dr. Coffee separated out the effects of any DAA.  The ALJ's rationale for giving only "some weight" to their opinion is insufficient.

The ALJ also gave only "some weight" to the Psychological/Psychiatric Evaluation form completed by Dr. Kramer on June 4, 2009.  (Tr. 646-649.)  Dr. Kramer opined that Plaintiff had marked limitations on his abilities to perform routine tasks and to respond appropriately to and tolerate the pressure and expectations of a normal work setting.

Although the ALJ indicated that Dr. Kramer's opinion "is generally consistent with the overall medical record," the ALJ offers no explanation for failing to include the marked limitations assessed by Dr. Kramer.  The ALJ did note, however, that Dr. Kramer concluded there was a strong possibility that Plaintiff's past psychosis may have been drug induced and that his psychosis may be related to his use of alcohol or illegal drugs.  (Tr. 20-21.)  It thus appears the ALJ again errs by failing to follow *Bustamante*.

The ALJ gave "little weight" to the July 27, 2007, Psychological/Psychiatric Evaluation form completed by Mr. Clark. (Tr. 21.)  Mr. Clark opined that Plaintiff had marked restrictions on his abilities to perform routine tasks, relate appropriately to co-workers and supervisors, interact appropriately in public

contacts and respond appropriately to and tolerate the pressure and expectations of a normal work setting. (Tr. 203.) Mr. Clark deemed Plaintiff "seriously disturbed" and indicated Plaintiff had limited employment potential. (Tr. 204.) The ALJ concluded Mr. Clark did not provide sufficient clinical findings to support his assessment and his assessment was inconsistent with the opinions of the state psychological consultants. (Tr. 21.)

Finally, the ALJ gave "little weight" to the opinion of examining consultant Ms. Molina. (Tr. 21.) On July 24, 2008, Ms. Molina completed a Psychological/Psychiatric Evaluation form indicating that Plaintiff had marked restrictions on his abilities to understand, remember and follow complex instructions, relate appropriately to co-workers and supervisors, and care for self, including personal hygiene and appearance. (Tr. 639-645.) Ms. Molina opined that medication was not likely to improve Plaintiff's ability to perform in a work setting. (Tr. 641.)

The ALJ found Ms. Molina's assessment inconsistent with the overall medical record, the opinion of the state medical consultants, and Plaintiff's range of activities. (Tr. 21.) The ALJ also gave the opinion little weight because it consisted primarily of the state's check-off evaluation form. (Tr. 21.) Although a check-box form may be entitled to little weight, *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996), Ms. Molina's check-box report contained ample explanation of the bases for her conclusions. (Tr. 639-645.) Furthermore, the state medical consultant, whose opinions the ALJ accorded significant weight, used a similar check-box evaluation form. (Tr. 320-336.) The ALJ did not explain why a

1 check-box form completed by the state agency consultant was entitled
2 to more weight than the check-box form completed by Ms. Molina.
3     With respect to Mr. Clark and Ms. Molina, Defendant's response
4 brief also contends that the medical providers rendered their
5 opinions during periods when Plaintiff refused to take anti-
6 psychotic medication. (ECF No. 31 at 16.) Defendant asserts that
7 it is further unclear whether Dr. Ballasiotes rendered his opinion
8 during a period when Plaintiff was non-compliant with treatment.
9 *Id*. The ALJ's decision, however, makes no mention of these factors.
10 Accordingly, these assertions will not be addressed by this court.
11 *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (it is
12 error for a district court to affirm an ALJ's credibility decision
13 based on evidence that the ALJ did not discuss).
14     Based on the foregoing, the court finds the ALJ failed to
15 provide specific and legitimate reasons for rejecting the opinions
16 set forth by Dr. Ballasiotes, Dr. Coffey and Ms. Neal, Dr. Kramer,
17 Mr. Clark, and Ms. Molina in favor of the opinions of the state
18 medical consultants. *Roberts*, 66 F.3d at 184. It is apparent the
19 ALJ found Plaintiff's past drug and/or alcohol abuse a significant
20 factor in his ultimate determination as he repeatedly mentioned DAA
21 in his evaluation of the medical evidence. Yet, the ALJ did not
22 follow the procedure provided by the Ninth Circuit in *Bustamante*.
23 Because the ALJ did not first determine whether Plaintiff was
24 disabled by all of his impairments, including his DAA, before
25 deciding whether he would be disabled absent the effects of drug and
26 alcohol abuse, this matter must be remanded for additional
27 proceedings.
28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, IN PART,
AND REMANDING FOR ADDITIONAL PROCEEDINGS - 14

On remand, the ALJ shall reassess Plaintiff's RFC, taking into consideration the opinions of all medical professionals of record, as well as any additional or supplemental medical evidence relevant to Plaintiff's claim for disability benefits. The ALJ shall additionally elicit the testimony of a medical expert at a new administrative hearing to assist the ALJ in formulating a new RFC determination. If Plaintiff succeeds in proving he is disabled with the effects of DAA, the ALJ must then determine whether DAA is material to the determination of disability. *Bustamante*, 262 F.3d at 954-955. If the ALJ finds Plaintiff is not disabled, then Plaintiff is not entitled to benefits and there is no need to proceed with the analysis to determine whether DAA is a contributing factor material to disability. *Id*. However, if the ALJ finds Plaintiff is disabled and there is medical evidence of DAA, then the ALJ must next determine if Plaintiff would be disabled if he stopped using alcohol or drugs. *Bustamante*, 262 F.3d at 954-955.

**B.   Plaintiff's Credibility**

Plaintiff asserts that the ALJ improperly rejected Plaintiff's subjective complaints. (ECF No. 22 at 19-22.) Defendant responds that the ALJ reasonably found Plaintiff's testimony was not fully credible. (ECF No. 31 at 18-19.)

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by "specific" "cogent" reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit his testimony as to the

severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). There is no affirmative evidence of malingering in this case; therefore, the ALJ was required to give "clear and convincing" reasons for rejecting Plaintiff's testimony. *Lester*, 81 F.3d at 834.

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC determination. (Tr. 19.) The ALJ indicated that the evidence supports that Plaintiff is able to engage in a wider range of activities than alleged, and his impairments are not as severe as he alleged. (Tr. 19.) The ALJ further indicated the objective medical evidence did not support Plaintiff's allegations that his multiple physical and mental symptoms limited him from working entirely. *Id*.

While it is true Plaintiff has reported he is able to prepare meals, perform housework, pay bills, socialize with friends, attend church, shop for groceries, attend support group meetings and watch television and movies, the Ninth Circuit has repeatedly asserted that "the mere fact that a claimant has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260

F.3d 1044, 1049-1050 (9th Cir. 2001). A claimant's ability to engage in sporadic activities with periodic rest, such as housework and exercise, does not support a finding that he can engage in regular work activities. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Furthermore, the ALJ did not identify any material inconsistencies between Plaintiff's testimony that he "had difficulty" doing chores (Tr. 64) and reports of his activities. There is no material inconsistency between having difficulty with activities of daily living and being capable of performing activities of daily living.

With regard to the ALJ's indication that the objective medical evidence did not support Plaintiff's allegations, the ALJ cited only the medical evidence that supported this assertion (Tr. 19) and not the medical reports of the other medical professionals of record which tend to support and confirm Plaintiff's claims. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (although within the power of the ALJ to make findings concerning the credibility of a witness and to weigh conflicting evidence, the ALJ cannot first reach a conclusion and then attempt to justify that conclusion by ignoring competent evidence in the record that suggests an opposite result). Plaintiff's testimony regarding his limitations is corroborated by many of the medical reports of record. *See supra*.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not

substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). Nevertheless, after reviewing the record, the undersigned determines that the ALJ failed to provide "clear and convincing" reasons for finding Plaintiff not fully credible in this case. *Lester*, 81 F.3d at 834. Accordingly, on remand, the ALJ shall reconsider, reevaluate and accord the appropriate weight to Plaintiff's statements.

**C.   Vocational Expert**

Plaintiff lastly contends that the ALJ failed to account for numerous limitations identified by Plaintiff's treating and examining medical providers in the hypothetical presented to the vocational expert.

As indicated above, this matter must be remanded for additional proceedings consistent with *Bustamante*. On remand, the ALJ shall reassess Plaintiff's RFC, taking into consideration Plaintiff's testimony and the opinions of all medical professionals of record, as well as any additional or supplemental medical evidence. Plaintiff's new RFC assessment should be presented to a vocational expert to determine if Plaintiff is capable of performing any other work existing in sufficient numbers in the national economy.

## CONCLUSION

The court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, IN PART, AND REMANDING FOR ADDITIONAL PROCEEDINGS - 18

additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, further development is necessary to remedy defects and for a proper determination to be made. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(ECF No. 21)** is **GRANTED IN PART**, and the matter is remanded to the Commissioner for additional proceedings consistent with this order.

2. Defendant's Motion for Summary Judgment **(ECF No. 30)** is **DENIED**.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **Plaintiff,** and the file shall be **CLOSED**.

DATED August 1, 2012.

                    S/ CYNTHIA IMBROGNO
            UNITED STATES MAGISTRATE JUDGE